ROLLIN P. BLANCHARD

v.

THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY.

*Filed at Ottawa November 15, 1888.*

1. NEGLIGENCE—*want of due care on the part of the plaintiff—in what it may consist—burden of proof.* In an action to recover for a personal injury on the ground of negligence in the defendant, the burden of proof is upon the plaintiff, to establish, either that he himself was in the exercise of due care, or that the injury was in no degree attributable to any want of ordinary care on his part. If he shows that he brought the injury on himself by his own carelessness, he can not recover.

2. In an action against a railway company, to recover for the death of plaintiff's intestate through alleged negligence, the plaintiff showed that at the time of the accident, when the deceased was struck by the locomotive engine, he was a trespasser upon the right of way of the defendant, which fact is of itself evidence of a want of ordinary care, and there was no evidence that the injury was willfully or wantonly inflicted: *Held,* that the court properly instructed the jury to find for the defendant.

3. So where a person is killed by an engine or train while wrongfully on a railroad track,—as, when he is walking thereon for mere convenience or pleasure, not at a public crossing,—he will be guilty of such gross negligence as to preclude a recovery by his personal representative against the company operating the engine or train, unless his death is caused willfully or wantonly, or the company is chargeable with such gross negligence as is evidence of willfulness.

4. SAME—*over-speed of railway train—as an excuse for the want of ordinary care.* In an action against a railway company for causing the death of the plaintiff's intestate by a train of cars while he was on the track, the fact that the train was running at a greater speed than allowed by ordinance, may be considered by the jury in determining whether defendant was guilty of such negligence as caused the death, if the deceased was lawfully on the track at the time, or otherwise was in the exercise of ordinary care.

5. The fact that a railway company was running its train within a city at a speed prohibited by ordinance, will not relieve a party injured from the exercise of ordinary care for his personal safety, and the speed of the train will not, of itself, furnish a sufficient reason for holding that the injury was willful or wanton.

Brief for the Appellant.

| 126 | 416 |
|---|---|
| 203 | 5390 |
| 205 | 6290 |
| 109a | 5519 |
| 126 | 416 |
| 211 | 6537 |
| 126 | 416 |
| 114a | 2234 |

6. SAME—*allegations and proofs—as to ordinance requiring signal.* In an action against a railway company for killing a person on the railroad track not at a street crossing, the plaintiff, to prove negligence, offered in evidence a section of an ordinance, "that the bell of each locomotive engine be rung continually while running within said city." There was no allegation in the declaration that there was such a requirement of the city code, and its violation : *Held,* that the evidence was properly excluded for want of such allegation.

7. SAME—*what is a street crossing—within the law requiring bell to be rung.* The statute requiring a bell of thirty pounds weight to be rung eighty rods from a street crossing, has no application to a street where no travel passes over the track, except upon a viaduct above and over the tracks.

8. LIMITATIONS—*as to additional count on same cause of action.* In an action by a personal representative against a railway company, for causing the death of the intestate, the plaintiff, more than two years after the injury, by leave of court, amended his declaration by adding a new count, which, however, was a mere re-statement of the cause of action set up in the original counts. The defendant pleaded the two years Statute of Limitations to the new count, which the court held good, on demurrer: *Held,* that the court erred in so holding.

9. ERROR WILL NOT ALWAYS REVERSE—*overruling demurrer to plea.* Where the court erroneously sustained a plea to an additional count in a declaration, but the plaintiff introduced evidence, on the trial, under the other counts that he could have given under the additional count, it was *held,* that the error in overruling the demurrer was a harmless one.

10. APPEAL—*reviewing the facts.* Where the trial court instructs the jury to find for the defendant, or sustains a demurrer to the evidence, this amounts to holding that the evidence is insufficient, in law, to sustain the action, admitting all it tends to prove to be true, and when such action is assigned for error this court will review the evidence, in order to determine whether such ruling was correct.

APPEAL from the Appellate Court for the First District ;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN P. ALTGELD, Judge, presiding.

Mr. THOMAS DENT, and Mr. WILLIAM P. BLACK, for the appellant :

The question is, does the evidence now to be considered show that the deceased was on the track without right, and as a mere trespasser. Upon this question we have proof of its

27—126 ILL.

having been customary for the railroad employes, for years, to use this track in going from the railroad freight offices to get their dinner.   Certainly, proof of such usage was proper. *Townley* v. *Railroad Co.* 53 Wis. 626; *Railroad Co.* v. *Hammer*, 72 Ill. 349.

The plaintiff was entitled to have the case put to the jury, under proper instructions, as to whether his intestate exercised ordinary care under all the circumstances, and was also entitled to have the question of comparative negligence submitted to the jury.   *Railroad Co.* v. *Hedges*, 105 Ind. 398; *Byrne* v. *Railroad Co.* 104 N. Y. 362; *Cassida* v. *Navigation Co.* 14 Ore. 551.

The additional count was but a re-statement of the cause of action for which the suit was brought, and was not obnoxious to the objection of introducing a new cause of action. In fact, the statute on which the action is based gave but one right of action, and the additional count referred to this, and no other, cause of action; and for this reason the additional count could properly be filed, without being subject to the bar of the statute.   *Dickson* v. *Railroad Co.* 81 Ill. 217.

It was for the jury to determine whether there was a want of ordinary care on the part of the plaintiff, under the evidence, as presented.   "Negligence is not a legal question, but is one of fact."  *Railroad Co.* v. *Haworth*, 39 Ill. 353; *Holmes* v. *Railroad Co.* 94 id. 444.

The defendant, by asking the court to instruct the jury to find for the defendant, admitted the truth of plaintiff's evidence, and all presumptions or conclusions of fact which a jury might fairly draw from the same.   *Phillips* v. *Dickerson*, 85 Ill. 11.

Mr. Pliny B. Smith, for the appellee:

The ruling of the court on the demurrer to the plea of the Statute of Limitations, even if erroneous, worked no harm, as the evidence proposed was admitted under the other counts.

That the deceased was a trespasser on appellee's track, see *Railroad Co.* v. *Godfrey,* 71 Ill. 500; *Railroad Co.* v. *Hetherington,* 83 id. 510; *Railroad Co.* v. *Mulherin,* 81 Pa. St. 367; *Railroad Co.* v. *Schwingling,* 101 id. 288; *Morrissey* v. *Railroad Co.* 126 Mass. 327; *Wright* v. *Railroad Co.* 129 id. 440; *Cauley* v. *Railroad Co.* 95 Pa. St. 398.

Walking wrongfully upon appellee's track is gross negligence, and such as to bar a right of recovery, unless the injury was wanton or willful. *Centralia* v. *Krouse,* 64 Ill. 19; *Railroad Co.* v. *Hall,* 72 id. 222; *Railroad Co.* v. *Hammer,* id. 349.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action on the case, brought, under the act of February 12, 1853, "requiring compensation for causing death by wrongful act, neglect or default," to recover damages for the death of John W. Riordan, alleged to have been caused by the carelessness and improper conduct of the Appellee Company. The suit was begun in the Superior Court of Cook County in August, 1883, and, after the first trial which resulted in a verdict for the plaintiff, was appealed to the Appellate Court by the Railroad Company and reversed and remanded. After it was so reversed and remanded, the plaintiff filed an additional count on April 20, 1887, alleging that the defendant ran the engine, which caused the death of the deceased, at a greater rate of speed than was permissible under the ordinance of the city of Chicago forbidding passenger trains to run faster than ten miles an hour and freight trains to run faster than six miles an hour within the city limits, and that, when the accident occurred, the defendant was running its engine at the rate of fourteen miles an hour and had no watch or look-out upon the engine so as to provide for the safety of persons who might be upon the track, etc.

The declaration, as originally filed, contained four counts; the first and second charged generally the careless and im-

proper management of the engine; the third alleged the failure to ring a bell or blow a whistle, as required by the statute, when within eighty rods of a street crossing; the fourth charged that the engine was running at the rate of fourteen miles an hour in violation of the ordinance aforesaid. This fourth count is substantially the same as the additional count filed after reversal, except that the latter alleges a failure to keep and maintain a watch or lookout upon the engine, and charges the defendant with a "wanton and reckless disregard of its duty," and with "negligent, unlawful and wanton mis-conduct."

The defendant below pleaded the general issue to all the counts, and also a plea of the statute of limitations of two years to the additional count. The trial court overruled plaintiff's demurrer to the latter plea and held the plea to be good, to which ruling plaintiff excepted. Judgment was entered for the defendant upon the plea of the statute of limitations, to which also plaintiff excepted.

Upon the second trial before a jury, after the plaintiff had introduced his evidence, the defendant orally demurred thereto and moved for an instruction to the jury to find for the defendant. The Court thereupon instructed the jury in writing as follows: "The jury are instructed that, under the evidence in this case, their verdict must be for the defendant." The plaintiff excepted to this instruction and to the withdrawal of the case from the jury. Verdict was rendered for defendant, judgment entered upon the verdict, and exception taken by the plaintiff. The judgment of the trial court has been affirmed by the Appellate Court, and the case is brought before us by appeal from the latter court.

Where the jury are instructed to find for the defendant, or, what is the same thing, where a demurrer to the evidence is sustained, such action of the court is the same as holding that the evidence is insufficient in law to sustain the action, even if all that it tends to prove is admitted to be true. (*Doane* v. *Lockwood*, 115 Ill. 492.) In order, therefore, to determine

whether the court in this case properly instructed the jury to find the issues for the defendant, it becomes necessary to look into the evidence.

The deceased was killed on December 15, 1882. He was sixteen or seventeen years old, and, on the day of his death and for about three months prior thereto, was at work in the freight house of the Chicago and North-Western Railway Company. This freight house was located in the west division of the city of Chicago between Meagher street on the north and Sixteenth street on the south, and between Jefferson street on the east and Union street on the west. Its eastern end fronted on Jefferson street and it extended westward for about 400 feet towards Union street, its western end being about 125 or 150 feet east of Union street. South of it and extending from Jefferson street to Union street was the freight house of the Chicago Burlington and Quincy Railroad Company. The next street west of Union was Halstead street. Between Union and Halstead streets was the round house of the C. B. and Q. R. R. Co., standing to one side and out of the way of the R. R. tracks. Newberry Avenue is the street next west of Halstead street and Johnson street is the next street still further to the west. South of 16th street and parallel with it is 17th street, which runs east and west. · The deceased lived on 17th street between Newberry Avenue and Johnson street and nearer to the latter than the former.

The two blocks between Jefferson and Halstead streets, on the east and west, and Meagher and 16th streets, on the north and south, are covered with railroad tracks, there being some twenty five or thirty of such tracks. They run from east to west. They cross Jefferson and Union streets. Some of them run between the freight houses of the two roads. The northern tracks towards Meagher street are owned by the C. & N. W. R. R. Co. and the southern tracks towards 16th street by the C. B. & Q. R. R. Co. One or two tracks run into the western

end of the N. W. freight house, and one or more tracks north
of it, and one or more south and along side of it.

At Halstead street there is a bridge or viaduct, which is a
part of the street. The R. R. tracks and the engines and cars
on them run under this bridge, and the public travel passes
on it above the tracks and trains.

At twelve o'clock on December 15, the deceased came out
of the western end of the N. W. freight house to go home to
his dinner. He went westward across Union street upon the
N. W. tracks to a point between Union and Halstead streets,
then turned south to the C. B. & Q. tracks and was walking
along the northern track of the C. B. & Q. road or diagonally
across it, when he was struck and killed by an engine of the
appellee, backing "tender first" on the C. B. & Q. track towards
the west. The accident occurred at a point about two feet
east of the viaduct.

The deceased was not struck at a street crossing, but while
upon the R. R. track between Union street and the Halstead
street viaduct. At Halstead street foot passengers did not cross
the tracks as at Union and Jefferson streets, but passed above
them upon the bridge. The proof shows that, in this net work
of tracks, cars and engines are constantly passing and re-
passing. The tracks do not run along either Meagher or 16th
street, but upon the space between them. The deceased might
have done as his father did, who came out of the freight house
with him. He might have turned southward upon Union street
and then westward on 16th street, and, in this way, would have
avoided walking along the tracks. His intention was, either
to walk along upon the track westward to Newberry Avenue
and then turn southward to 17th street where he lived, or to
cross the tracks near the east side of the Halstead street via-
duct moving southward so as to strike 16th street. In either
case he was not where he had a right to be.

It is clear, that, under the doctrine laid down by this Court
in *I. C. R. R. Co.* v. *Godfrey*, 71 Ill. 500, and *I. C. R. R. Co.*

v. *Hetherington*, 83 Ill. 510, the deceased was a trepasser upon the right of way of the Railroad Company. He was walking along the railroad track, or trying to cross the tracks in a diagonal direction, at a point where there was no regular street crossing and where foot passengers could not lawfully go. He was not so traveling upon any business connected with the railroad. It is true that he was employed in the freight house of the C. & N. W. R. R. Co. as an assistant "freight caller," but, when he was killed, he was walking on the tracks of the C. B. and Q. R. R. Co. using them for his own convenience in going to his home to get his dinner.

The plaintiff introduced some testimony tending to show, that, for a number of years the workmen in the freight houses, who lived west of the Halstead street viaduct, had been in the habit of walking upon the tracks under the viaduct at the noon hour in order to reach their homes for dinner by a shorter route, and that this custom had never been prohibited or interfered with by the railroad companies. It is therefore claimed that the deceased was on the tracks by the implied permission of the railroads and can not be regarded as a trespasser. But this precise question was decided adversely to the claim thus made in the *Godfrey case*. It was there said: "The plaintiff was traveling upon defendant's right of way * * * for his own mere convenience * * * . There was nothing to exempt him from the character of a wrong-doer and trespasser in so doing, further than the supposed implied assent of the company, arising from their non-interference with a previous like practice by individuals. But, because the company did not see fit to enforce its rights and keep people off its premises, no right of way over its ground was thereby acquired." The *Godfrey case* was referred to and indorsed in the *Hetherington case*, where it was said: "The deceased, when injured, was walking * * * upon the right of way of the railroad company for pleasure. * * * She occupied the position of a trespasser. The fact that persons residing in the locality where

the accident occurred had been in the habit of traveling upon the right of way of the defendant, and no measures had been taken to prevent it, did not change the relative rights or obligations of the deceased or the railroad company."

Under the authorities cited, we think that the deceased was guilty of gross negligence in walking upon the track at the place above described. This being so, no recovery can be had in this action, unless the death of the deceased was "wilfully or wantonly" caused by the defendant, or unless the defendant is chargeable with such "gross negligence as evidences wilfulness." In the *Godfrey case* it was held as follows: "Notwithstanding the plaintiff was unlawfully upon defendant's right of way * * * yet the defendant might not, with impunity, wantonly or wilfully injure him. And if defendant's servants, who were in the management of the engine, after becoming aware of plaintiff's danger, failed to use ordinary care to avoid injuring him, defendant might be liable." In the *Hetherington case* it was also said: "Where a person, voluntarily and without authority, undertakes to travel upon a railroad track, he ought not to recover damages for an injury received, unless it was wanton and wilful."

The plaintiff in this case has not shown that the conduct of the defendant or its servants was wanton or wilful. The proof tends to show, that the engine was moving at a rate of speed greater than that permitted by the city ordinance. This circumstance might well have been considered by the jury in determining whether the defendant was guilty of such negligence as caused the death of the deceased, if the latter had been lawfully upon the track, or had otherwise been in the exercise of ordinary care. But in the *Hetherington case* the following language was used: "While it is true the railroad company was running its train at a greater rate of speed than allowed by the ordinance of the city of Chicago, yet that fact did not relieve the deceased from the exercise of ordinary care, nor can the speed of the train alone be regarded as furnishing

a sufficient reason for holding that the injury was wilful or wanton."

The plaintiff offered to introduce in evidence section 1836 of the Municipal Code of Chicago, which reads as follows: "That the bell of each locomotive engine be rung continually while running within said city." This was properly excluded by the trial court, because there was no allegation in the declaration that there was such a requirement of the City Code and, therefore, defendant had not been charged with a breach of it. (*I. C. R. R. Co.* v. *Godfrey, supra.*). The only allegation upon this subject in the declaration is, that no bell of 30 lbs.' weight was rung at the distance of 80 rods from the crossing. This has reference to a requirement of the statute. The evidence does not show a violation of this statutory provision. If it were true that such a bell was not rung at a distance of 80 rods from Halstead street, it can not be said that Halstead street was a crossing, because, as already stated, no travel passed over the tracks at that street, except upon the viaduct far above and out of the way of the tracks.

The proof does not show that defendant's servants, who were in the management of the engine, failed to use ordinary care to avoid striking him.

We do not think that the trial court erred in instructing the jury to find for the defendant. The defendant introduced no evidence. There was no conflict in the testimony. "Admitting all the testimony tends to prove" we have no hesitation in saying that plaintiff did not establish a right to recover. (*C. R. I. & P. Ry. Co.* v. *Lewis,* 109 Ill. 120.) It was incumbent on him to prove that the deceased was in the exercise of ordinary care. He showed that, at the time of his death, the deceased was a trespasser upon the right of way of the railroad company. This court has decided that such fact is itself evidence of a want of ordinary care. "The burden is always upon the plaintiff to establish either that he himself was in the exercise of due care, or that the injury is in no degree attributable

to any want of proper care on his part." (Wharton's Law of Negligence, (2d ed.) sec. 424). "If, therefore, the plaintiff, in his own case, shows that he brought the injury on himself by his own carelessness, he may be non-suited." Id. sec. 427.

As the violation of the city ordinance by running at too great a rate of speed is the fact relied on to show that defendant wantonly and wilfully caused the death of Riordan, and as this Court has decided that such fact is not evidence of wilfulness, it follows, that, if the case had been submitted to the jury and a verdict for the plaintiff had been returned, it would have been the duty of the trial court to set the verdict aside. This being so, it was proper for the court to instruct the jury in the first place to find for the defendant. (Wharton's Law of Negligence, sec. 420.)

The trial court erred in overruling the demurrer to the plea of the statute of limitations. The additional count did not introduce a new cause of action, but was a mere re-statement, by way of amendment, of the cause of action set up in the original counts of the declaration. The plea of the statute of limitations to the additional count was not, therefore, a good plea. But this error worked no harm to the appellant, as all the evidence proper to be introduced under the additional count was permitted to be introduced under the other counts.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAILEY, having heard this cause in the Appellate Court, took no part in this decision.